IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALLYSON YUKECH, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 2:20-cv-05804 |
| v. | : |
| | : Chief Judge Algenon L. Marbley |
| CALIFORNIA TRANSPORT LLC d/b/a | : Magistrate Judge Kimberly A. Jolson |
| PRIORITY SOLUTIONS GROUP, *et al.*, | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

This matter comes before the Court on the Motion for Summary Judgment of Defendants California Transport LLC and Edmon Deon Holloway (ECF No. 25). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

**I. BACKGROUND**

On the morning of October 29, 2019, Plaintiff Allyson Yukech was driving in the right lane of Interstate 71, heading northbound near milepost 150 in Morrow County, Ohio, when she encountered a tractor-trailer driven by Defendant Edmon Holloway. Yukech was speeding at about 80–86 miles per hour, but within the flow of traffic. Holloway had stopped overnight on the side of the highway before a rest area and was just getting back on the road with a load of steel coils on the flatbed of his truck. Instead of following the off-ramp to the rest area, driving through the rest area, and back on to the on-ramp, Holloway executed a "dangerous maneuver": he cut from the berm on the side of I-71 across the off-ramp, began to gather speed on the shoulder of the highway, and then merged into the right lane — in front of Yukech, who ran her 2015 Chevy Malibu into the back of Holloway's trailer. The Malibu hooked onto the rear end of trailer and

1

was dragged onto the shoulder of the highway. The accident resulted in serious lower body and internal injuries for Yukech, who has spent years recovering and continues to suffer from chronic constipation and gastrointestinal problems. The crux of this case is whether Holloway and his employer, Defendant California Transport LLC d/b/a Priority Solutions Group ("California Transport"), should be held liable for negligently causing Yukech's severe injuries.

### A. Factual Background

The night before the accident, Holloway arrived at the rest area after a full day of driving. Holloway was an independent contractor, licensed to drive tractor-trailers and semitrucks for California Transport. (Deposition of Edmon Deon Holloway ("Holloway Dep.") 7:7–22, 18:21–19:4, ECF No. 26-1). On this particular trip, he was tasked with hauling a flatbed trailer carrying steel coils. (*Id.* 7:1–6). Upon arriving at the rest area, Holloway pulled over to rest for the night, pursuant to federal regulations requiring occasional breaks for commercial truck drivers. He assumed that the rest area was full, after noticing a line of trucks waiting on the off-ramp leading into the rest area, and therefore decided to park on the side of the highway. (*Id.* 22:24–23:7). Holloway remembered nestling his truck in a gap between two other trucks somewhere before the start of the ramp, but Nathan Ullmer, who took Holloway's spot the next morning after Holloway departed, states that the parking spot was located to the side of the off-ramp rather than on the side of the highway itself. (*Id.* 26:25–27:5; *see* Deposition of Nathan Ullmer ("Ullmer Dep.") 11:15–16, ECF No. 31-1).

The weather the next morning was clear. (Deposition of Allyson Yukech ("Yukech Dep.") 30:7–8, ECF No. 27-1). Holloway woke up and conducted his normal "pre-trip": the routine of walking around the truck and trailer, inspecting the vehicle and load, and ensuring that everything was ready for departure. (Holloway Dep. 23:18–25, ECF No. 26-1). The typical path to return to

2

the highway would be to travel along the off-ramp, through the rest area, and then along the on-ramp onto the highway, which would give a driver enough time and distance to get her truck up to speed before merging on to the highway. (*See* Ullmer Dep. 34:24–25, ECF No. 31-1; Deposition of Gurjit Grewal ("Grewal Dep.") 24:1–8, ECF No. 28-1). This is especially the case where a truck driver must travel uphill with a loaded trailer and merge into heavy traffic, as such conditions further inhibit the already-slow acceleration of trucks. (Ullmer Dep. 34:8–12, ECF No. 31-1; Deposition of Kamal Nelson ("Nelson Dep.") 48:21–24, ECF No. 29-1 (noting that the on-ramp is intended for drivers to "accelerate so you can go with into [sic] the flow of what the traffic is, the speed of traffic, and then merge on")). Holloway and Yukech both note that the traffic on I-71 that morning was "heavy" and "highly congested," but Ullmer and Bret Dumbaugh, the two third-party witnesses to the accident,[1] report that the traffic was light-to-moderate. (Holloway Dep. 37:16, ECF No. 26-1; Yukech Dep. 33:24, ECF No. 27-1; Ullmer Dep. 32:20–21, ECF No. 31-1; Deposition of Bret Dumbaugh ("Dumbaugh Dep.") 8:20–21, ECF No. 30-1).

Whatever the traffic conditions, Holloway eschewed the natural route to the highway, in part because he thought that it would be more dangerous to go through the rest area. (Holloway Dep. 30:23–25, ECF No. 26-1). Instead, Holloway cut across the off-ramp leading to the rest area and started driving along the shoulder of I-71 as he accelerated. (*Id.* 30:4–7). This section of the highway consists of three lanes, with a posted speed limit of 70 mph. Eventually, Holloway moved from the shoulder of the highway into the rightmost of the three lanes. He claims that he waited until he had gained speed, checked that the road behind him was clear for at least a quarter-mile,

---

[1] Bret Dumbaugh was traveling in the middle lane of the highway when Yukech passed him in the right lane. He was traveling in the same direction as Yukech and Holloway and was the first person to telephone 911 after witnessing the crash. As mentioned previously, Ullmer took the parking spot that Holloway had stayed in overnight and saw the crash from there. (Hicks Report at 15, ECF No. 34-8).

and flipped on his turn signals before merging. (*Id.* 21:13–19, 30:4–7, 66:9–13). The lane change took, according to Ryan Hicks, Defendants' engineering expert,[2] somewhere between 3.25 and 5.90 seconds to complete. (Affidavit of Ryan Hicks ("Hicks Aff.") ¶ 4(k), ECF No. 25-6). Holloway claims that he then settled into the right lane and turned on his four-way flashing lights (i.e., his hazard lights). (Holloway Dep. 21:19–24, ECF No. 26-1).

Yukech paints a different picture of Holloway's merge onto the highway. She proffers Ullmer's eyewitness testimony, from about 300 feet away, that Holloway merged suddenly and rapidly, shooting across the right lane from the exit ramp and barely missing the grassy median between the off-ramp and the highway.[3] (Ullmer Dep. 32:8–17, 55:20–23, ECF No. 31-3). Furthermore, multiple witnesses report that, at the time of the merge, Holloway had not yet gotten up to speed and was driving at around 20–30 mph. (*See id.* 31:24–32:6; Dumbaugh Dep. 20:21–21:2, ECF No. 30-1; *see also* Holloway Dep. 36:12–14 (acknowledging that he may have only been traveling at 20 mph), ECF No. 26-1; Hicks Aff. ¶ 4(c), ECF No. 25-6 (noting that the tractor-trailer had reached a speed of "at least 34 mph at impact")).

Shortly thereafter, Yukech's car, which had been travelling in the right lane, crashed into the back of Holloway's truck. Exactly how much time passed between Holloway's decision to merge and the moment of impact is hotly disputed by the parties. Yukech suggests that the two events happened in quick succession, noting that Ullmer remembers only two seconds passing between Holloway's attempted merge and the impact. (*See* Ullmer Dep. 55:8–13, ECF No. 31-1).

---

[2] Hicks is employed by HRYCAY Consulting Engineers, Inc., where he specializes in motor vehicle accident investigations.

[3] Ullmer's testimony is contradictory at times. In the passage cited above, Ullmer recalls seeing the semi shooting across the exit ramp and onto the right lane of the highway. But later, Ullmer states that Holloway first traveled on the shoulder of the highway for 200 ft before merging into the right lane of the highway (while acknowledging that he is bad at estimating distances). (*Id.* 39:20–40:1, 40:23–25).

As far as Ullmer or Dumbaugh could see, Holloway did not have a chance to establish himself fully in the right lane before Yukech crashed into the truck. (*Id.* 55:14–19; *see also* Dumbaugh Dep. 21:4–10, ECF No. 30-1). Exacerbating the situation was the presence of a box truck, which had been traveling in the right lane about four-to-six car lengths in front of Yukech but moved suddenly out of the way before the crash. (*See* Yukech Dep. 34:15–20, ECF No. 27-1). The box truck had previously blocked both Yukech's view of the roadway and Holloway's view of Yukech. (*Id.* 35:7–13; *see* Holloway Dep. 66:17–25, 69:10–13, ECF No. 26-1). As the box truck moved, Yukech remembers being suddenly confronted with Holloway's truck in front of her with no time to react except to brake sharply. (*See* Yukech Dep. 37:7–9, 22–24, ECF No. 27-1).

But, while both Holloway and Yukech report that there was a box truck traveling in the right lane in front of Yukech, neither of the third-party eyewitnesses remembers such a truck. (Dumbaugh Dep. 24:2–12, ECF No. 30-1; Ullmer Dep. 38:1–6, ECF No. 31-1). Moreover, Defendants suggest that the crash happened nearly 30 seconds after Holloway merged on to the highway — plenty of time for Yukech to notice Holloway's truck and slow down or move out of the way, whether or not there was a box truck blocking Yukech's view. Holloway claims that, after gaining speed and merging onto the highway, he settled fully into the right lane without issue. (Holloway Dep. 21:13–21, ECF No. 26-1). Hicks, the engineering expert, corroborates Holloway's assertion that he had completed the merge by the time of the crash. Hicks reports that, based on the relevant tire marks and pavement scars, the crash occurred fully in the right lane of Interstate 71. (Hicks. Aff. ¶ 4(i), (j), ECF No. 25-6; *see also* Grewal Dep. 25:14–26:4, ECF No. 28-1). Yukech's car showed uniform impact across the front, which further suggested to Hicks that the Malibu and the tractor-trailer were directly aligned on the highway at the moment of impact (as compared to the truck still angling into the highway). (Hicks Aff. ¶ 4(l), ECF No. 25-6).

Hicks also estimates that the crash happened at least 31 seconds after Holloway left his overnight parking spot, relying on his measurement that the crash happened at least 712 feet, 9 inches from the parking spot.[4] (*Id.* ¶ 4(b), (c)). Hicks suggests that, given that amount of time, Yukech would have had enough time to stop her car or evade Holloway's tractor-trailer if she had been driving at the speed limit of 70 mph. (*Id.* ¶ 4(o)). This is true, even if there was a box truck, because Yukech would still have had at least 6 seconds (and 686 feet of distance) to notice the tractor-trailer and take evasive steps per Hicks' calculations. (*Id.* ¶ 4(q)). But Yukech was driving far faster than the speed limit: the pre-crash data from the Malibu indicates that she was traveling at about 85–86 mph during the five seconds before the crash, which Yukech suggests was within the flow of traffic. (*See id.* at 7; Yukech Dep. 33:23–24, ECF No. 27-1; Ullmer Dep. 37:23–25, ECF No. 31-1 (recalling that Yukech was driving at "just normal highway speed")). The data also shows that Yukech did not brake until less than one second before the crash,[5] nor did Yukech attempt to swerve out of the way. (*See id.*; *id.* ¶ 4(m)). Defendants suggest that she may not have reacted in time because she was looking at her phone and texting while driving, which Yukech disputes. (Dumbaugh Dep. 10:18–11:1, ECF No. 30-1. *But see* Yukech Dep. 42:11–14, 43:12–20, ECF No. 27-1).

After impact, the Malibu hooked onto the rear of the tractor-trailer and was dragged 279 feet before coming to a rest on the right shoulder of the highway. (*See* Hicks Aff. ¶ 4(n), ECF No.

---

[4] The expert report arrives at this distance based upon the assumption that Holloway accurately self-identified the location where he parked. (*See* Hicks Report at 12–13, Ex. H, ECF No. 34-8 (referring to the distance from "[t]his location" based on Holloway's testimony)). But, as noted previously, Ullmer states that the parking spot was on the side of the off-ramp, substantially closer to the rest area than the spot that Holloway recalled, which would shorten the distance between the parking location and the location of the crash.

[5] The pre-crash data records the car's speed in 0.5-second increments. The Malibu was still traveling at 85 mph one second before the collision, at which point Yukech had started lifting off the throttle; the car slowed down to 76 mph at 0.5 seconds before the collision.

25-6). Yukech suffered severe injuries as a result of the crash, including damage to her hips, leg, knee, and internal organs, as well as a concussion, resulting in a 36-day hospital stay and continuing chronic conditions. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. ("Pl.'s Resp.") at 4, ECF No. 34).

### B. Procedural Background

Plaintiff filed this suit against Defendants California Transport and Edmon Holloway on November 6, 2020, in this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Compl., ECF No. 1). In her initial Complaint, Yukech alleged one count of negligence against Holloway, in part asserting a theory of negligence *per se* for violations of Ohio Rev. Code §§ 4511.33(A)(1) and 4511.44, one count of vicarious liability against California Transport, and one count of negligence against California Transport regarding its hiring and training of Holloway. (*See generally id.*). In July 2022, Defendants filed their Motion for Summary Judgment (ECF No. 25) on all claims (later resubmitted as ECF No. 33 in compliance with Local Rule 5.1(c)).[6] Plaintiff later moved for and was granted leave to file an amended complaint in October 2022 over Defendants' objections. (*See* Mot. for Leave to File, ECF No. 36; Op. & Order, ECF No. 40). The Amended Complaint adds an allegation that Holloway was negligent *per se* for violating Ohio Rev. Code § 4511.22(A). Defendants' Motion for Summary Judgment (ECF No. 25) is now ripe for consideration before this Court.

### II. STANDARD OF REVIEW

Pursuant to the *Erie* doctrine, federal courts sitting in diversity apply state substantive law based on the choice-of-law rules of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

---

[6] For consistency, the Court refers to the Motion for Summary Judgment as ECF No. 25 throughout.

(1938); *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). In the present case, the Court looks to Ohio substantive law, as both parties rely upon Ohio law and all relevant events occurred in Ohio. *See Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (noting that "[w]here neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law" (quoting *ECHO Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995))). The *Erie* doctrine also requires federal courts to apply federal rules of procedure, even when sitting in diversity. Thus, the Court relies upon the standard set forth in the federal rules when evaluating motions for summary judgment in diversity cases. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459 (6th Cir. 1986) (citing *Bichler v. Union Bank & Tr. Co.*, 745 F.2d 1006, 1014 (6th Cir. 1984)).

Federal Rule of Civil Procedure 56(a) states that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). Summary judgment is inappropriate, however, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not

significantly probative" is not enough to defeat a motion for summary judgment, *id.* at 249–50, nor is "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position" sufficient. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

The initial burden rests upon the movant to present the Court with law and argument in support of its motion and to identify the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

### III. LAW & ANALYSIS

In her Amended Complaint, Plaintiff Yukech alleges three causes of action. Defendants suggest that the second and third counts, against Defendant California Transport, are derivative of Yukech's negligence claim against Defendant Holloway. (*See* Mot. for Summ. J. at 17, ECF No. 25. *But see* Pl.'s Resp. at 23, ECF No. 34 (agreeing that the vicarious liability claim is derivative of the negligence claim, but asserting that the negligence claim against California Transport is independent of the negligence claim against Holloway)). As such, Defendants do not proffer independent arguments in favor of summary judgment on the second and third counts; instead, they assert that Yukech's claims against California Transport are foreclosed by the inadequacy of her underlying claim against Holloway. (Mot. for Summ. J. at 17, ECF No. 25). Defendants'

9

argument regarding the negligence claim against Holloway proceeds in three parts: (1) Yukech was *per se* negligent by violating Ohio Rev. Code § 4511.21(A); (2) contrary to the assertions in the initial Complaint, Holloway was not *per se* negligent because he did not commit a marked-lane or right-of-way violation; and (3) even if Holloway was negligent, Yukech's negligence was a superseding cause of the accident. The Court addresses each component of Defendants' arguments in turn.

### A. Plaintiff's Alleged Negligence

Defendants suggest that the real cause of the accident can be traced to negligence on the part of Yukech, not Holloway. Specifically, Defendants argue that Yukech was negligent *per se* because she violated Ohio Rev. Code § 4511.21(A), which prohibits drivers from operating "a motor vehicle . . . at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." This provision is also known as the assured clear distance ahead ("ACDA") rule. A driver has violated the ACDA rule if it can be shown that he "collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Piper v. McMillan*, 730 N.E.2d 481, 488 (Ohio Ct. App. 1999) (quoting *Pond v. Leslein*, 647 N.E.2d 477, 478 (Ohio 1995)).

The second element of the *Pond* test is undisputed here, but Yukech suggests that there are genuine issues of material fact as to the first, third, and fourth elements. First, Yukech argues that Defendants have not indisputably established that Holloway was "ahead of" Yukech at the time of the crash. (Pl.'s Resp. at 15, ECF No. 34). Yukech relies primarily on the testimony of Ullmer and Dumbaugh that Holloway had not fully merged into the right lane of the highway (which Yukech was traveling in) at the time of the crash. (*See id.*). But this is insufficient to create a

10

genuine dispute of material fact. There is substantial evidence that Holloway was fully in the right lane ahead of Yukech at the time of the crash: the uniform crush pattern across the front of the Malibu clearly indicates that Yukech crashed into Holloway from behind. This conclusion is further corroborated by the pattern of pavement scars and tire marks left on the road and by the recollection of Lieutenant Grewal, who responded to the 911 call, that Holloway was "completely in the right lane." In fact, Yukech herself acknowledged that the truck she crashed into was "right in front of" her. (Yukech Dep. 38:18–21, ECF No. 27-1). The testimony that Yukech points to as contradictory does not squarely address the issue of whether Holloway was "ahead of" her; evidence that Holloway merged suddenly or cut across her speaks to the reasonableness of his merge, but not to the issue of whether he had merged fully and was ahead of Yukech at the moment of impact.

As to the third element, the Court concludes that there exists a genuine dispute about whether Holloway's tractor-trailer appeared suddenly in Yukech's path. As a threshold matter, the presence of the box truck, which Yukech and Holloway confirm but both third-party witnesses deny, does not affect the Court's analysis of the "suddenness" prong. In theory, if Yukech's vision was blocked by the box truck, she would have had less time to respond to Holloway's maneuver; by contrast, without a box truck, Yukech would have had an unobstructed view of the road and thus plenty of time to notice other vehicles and respond appropriately. But this theorizing is a red herring. The box truck, if it existed, does not absolve Yukech of her statutory duty to maintain a safe distance from vehicles in front of the box truck. Pursuant to the ACDA rule, if an Ohio driver has left sufficient distance in relation to the vehicle ahead of her such that she can avoid that vehicle even if it stops suddenly, the driver should also be able to avoid hitting an object further along on the road if the vehicle directly ahead of the driver swerves out of the way. *See Cox v. Polster*, 188

11

N.E.2d 421, 423 (Ohio 1963). An inability to avoid that object, which was ahead of the vehicle directly ahead of the driver, is an ACDA violation even if the vehicle directly ahead suddenly changed lanes (assuming all other elements of the *Pond* test are met). Here, Yukech was not able to avoid hitting Holloway (i.e., the object further ahead on the road) after the box truck (i.e., the vehicle directly ahead of Yukech) moved out of the way.

There is one major exception to the ACDA rule: a driver does not violate the rule if "the distance is suddenly cut down by the interjection of an object into [the driver's path] so that he cannot avoid such object." *Id.* This exception is often invoked where the object struck by the driver appeared suddenly from the side of the driver in an unexpected manner. *See Didier v. Johns*, 684 N.E.2d 337, 341 (Ohio Ct. App. 1996). And this is exactly what Yukech suggests happened. She and Ullmer both recall Holloway appearing suddenly from the shoulder of the highway, cutting off Yukech and leaving her no time to react.[7] (*See* Pl.'s Resp. at 16, ECF No. 34). The manner of Holloway's merge is highly relevant, contrary to Defendants' arguments otherwise. (*See* Defs.' Reply in Supp. of Summ. J. at 4, ECF No. 35 ("To that end, the manner in which Defendant entered the roadway is of no consequence. . . . As such, [Yukech's] 'expectations' about how the truck got into the lane are apropos of nothing." (citing *Didier*, 684 N.E.2d at 341))).

---

[7] The testimony from Ullmer can be read to support either parties' version of events. Ullmer told a police officer that "[t]he semi merged rapidly or shot across into the right lane from the exit ramp berm. It was sudden and he barely missed the grassy median." (Ullmer Dep. 32:10–19, ECF No. 31-1). Defendants suggest that this evidence indicates that Yukech had more time to notice and react to Holloway's presence in the right lane; after all, if Holloway merged suddenly across the off-ramp he would have arrive in the right lane quicker, especially if he did not cut across the grass at all. But while Ullmer stated in that quote that Holloway drove straight from the off-ramp to the right lane of the highway, he later stated that Holloway traveled for 200 ft along the shoulder of the highway, before then merging onto the highway proper. This leaves open the possibility that Holloway travelled on the shoulder and then suddenly merged into the right lane as Yukech was approaching, especially as Ullmer believed that Yukech did not have enough time to react to Holloway "because he had went from the shoulder to the lane so quickly." (*Id.* 55:4–7). As the Court must make all inferences in favor of the non-movant at summary judgment, *see Sierra Brokerage Servs.*, 712 F.3d at 327, the Court reads Ullmer's testimony as supporting Yukech's version of events.
Defendants also argue that Ullmer's testimony cannot be credited, because he may have looked away and only looked up upon seeing the accident. (*See id.* 7:8–20). But that raises a question about the weight of Ullmer's testimony, which is a question for a jury to resolve and is not appropriate at the summary judgment stage.

Defendants appear to suggest that, as long as a vehicle is discernible, it cannot join the roadway in a sudden manner. (*Id.*; *see also* Mot. for Summ. J. at 10, ECF No. 25 (noting, "[i]n regard to the third element . . . that Ms. Yukech had a minimum of 686 ft from which she would have seen Mr. Holloway's truck")). But that belies reality. Consider, for example, two cars traveling side by side on the highway. Even if the driver of the car on the left is aware that the other car is there, an attempt by the car on the right to switch into the left lane without first falling behind or passing the car on the left would be considered sudden and surprising. A highly visible vehicle can still appear suddenly in a driver's path; thus, the "manner" of Holloway's merge matters greatly in determining whether the third prong of *Pond* is satisfied.

Defendants argue that Holloway's appearance in Yukech's path was not "sudden" because, according to their expert, Hicks, Yukech still had 6 seconds (and 686 feet of travel distance) to notice Holloway's truck, even if her view was originally obstructed by the box truck.[8] Moreover, the expert calculates that it took Holloway 3.25–5.90 seconds to merge from the shoulder, which would give Yukech plenty of time to notice a semitruck entering the highway. Although Yukech does not provide an expert to rebut Hicks, she questions the basis of his conclusions. She points out, for example, that Hicks assumes that Holloway parked further back on the highway than Ullmer recalled, thus elongating the time and distance Holloway traveled between leaving his overnight parking spot and the accident.[9] (*See* Pl.'s Resp. at 22 & n.10, ECF No. 34). Yukech

---

[8] Without a box truck, the expert concluded that Yukech would have had 7 seconds and 700 feet of travel distance.

[9] Yukech raises other objections to the expert report are not relevant here. For example, Yukech notes that Defendants' expert assumes that she was maintaining a three-second following distance behind the box truck, whereas she recalls only being about one second behind (based on a four-to-six car length following distance) and Holloway also theorizes that the crash occurred because Yukech had followed the box truck too closely. (Resp. in Opp'n at 10, ECF No. 34; Holloway Dep. 21:24–22:2, ECF No. 26-1). That forms the basis of the expert's conclusion that Yukech had between 6 and 7 seconds to see Holloway and react, depending on whether there was a box truck. If Holloway and Yukech are right about the following distance, then Yukech would have had substantially less time to react to Holloway's truck appearing in the middle lane. Similarly, Yukech notes that the expert makes an assumption about

13

also points out that the expert report relies on the assumption that there was a three-second following distance between the box truck and Holloway's truck, whereas she suggests that the box truck switched lanes in order to avoid a collision with Holloway — implying that the minimal distance between the box truck and Holloway was smaller than Hicks assumes. (*See* Pl.'s Resp. at 22, ECF No. 34). It also appears that the expert report calculates the length of time required for Holloway to switch lanes by first assuming that Holloway was not executing a quick change and that all circumstances were "normal," despite Yukech's evidence to the contrary. (*See* Hicks Report at 18, Ex. H, ECF No. 34-8). In other words, the testimony from Yukech and Ullmer supports the proposition that Holloway appeared suddenly before Yukech, whereas Holloway's testimony and the Hicks' expert report (which relies largely on Holloway's testimony) arrive at the opposite conclusion. This is the definition of a genuine dispute of material fact.

Finally, the fourth element of the *Pond* test concerns whether the object struck by the driver accused of an ACDA violation was "reasonably discernable." The parties dispute the scope of the basic principle that "[a]n automobile, van, or truck stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law." *Pond*, 647 N.E.2d at 478 (quoting *Smiddy v. The Wedding Party, Inc.*, 506 N.E.2d 212, syl. ¶ 2 (Ohio 1987) (alteration in original)). Defendants note that October 29 was a clear day with no extraordinary weather conditions, thus seeking to establish that Holloway's truck was a "reasonably discernible" object to Yukech. Yukech, on the other hand, argues that the above-quoted principle should be cabined to stopped vehicles and cannot be applied to moving

---

when the box truck switched lanes that is not based on any actual knowledge. When the box truck switched lanes affects how much time Yukech had to react. But these arguments are foreclosed by *Cox*, as the amount of time Yukech had to react after the box truck moved does not alter the determination of whether she violated Ohio Rev. Code § 4511.21(A).

14

vehicles in a driver's path.[10] That argument is at odds with both *Pond* and common sense. First, *Pond* notes that the defendant in that case hit a vehicle that "was stationary or moving in the same direction" as the driver; it did not make any distinction between the driver's ability to discern a stopped vehicle from a moving vehicle. *See id.* At a more basic level, the principle originating from *Smiddy* and restated in *Pond* is about visibility: it is easy to see objects (including moving vehicles) on the road in clear weather, whereas it is much harder to evaluate whether a driver could see the object that she hit in inclement weather or at night. *Cf. id.* (noting that a jury question exists about whether an object hit by a driver in conditions of reduced visibility is reasonably discernible). There is no indication that Holloway's truck was not visible, or reasonably discernible, to Yukech.[11]

The Court concludes that there is a genuine issue of material fact as to whether Holloway suddenly appeared in front of Yukech, and therefore as to whether Yukech violated the ACDA rule embodied in Ohio Rev. Code § § 4511.21(A).

### B. Defendant's Role in the Accident

In her Amended Complaint, Yukech alleges that Holloway was negligent *per se* because he violated Ohio Rev. Code §§ 4511.22(A), .33(A)(1), and .44. (Amended Compl. ¶¶ 10–11, ECF

---

[10] Yukech frames this argument as addressing Defendants' misapplication of element 3 of the *Pond* test. (Pl.'s Resp. at 16, ECF No. 34). But the argument is about whether the object struck was "reasonably discernible," which goes to the fourth element of the *Pond* test.
Yukech similarly suggests that the "reasonably discernible" prong of the *Pond* test allows for an exception for "where the obstructing object enters the path of the operator from the side." (Pl.'s Resp. at 17, ECF No. 34 (citing *McFadden v. Elmer C. Breuer Transp. Co.*, 103 N.E.2d 385, 388 (Ohio 1952))). But that is only relevant for the third prong of the *Pond* test, discussed above. It does not, on the other hand, affect the calculation of whether the object struck was reasonably discernible. That calculation rests entirely on issues of visibility, lighting, etc. *Cf. McFadden*, 103 N.E.2d at 389 (distinguishing between the analysis of whether an object is reasonably discernible and the analysis of whether a vehicle has swerved).
[11] As noted previously, whether there was a box truck does not alter the analysis regarding whether Yukech committed an ACDA violation.

15

No. 41). Defendants argue that Holloway violated neither Ohio Rev. Code §§ 4511.33(A)(1) nor 4511.44,[12] and thus was not negligent *per se*. (Mot. for Summ. J. at 12–14, ECF No. 25).

First, Ohio Rev. Code § 4511.33(A)(1) requires that drivers operate their vehicles "as nearly as is practicable, entirely within a single lane or line of traffic" and not "move[] from such lane or line until the driver has first ascertained that such movement can be made safely." *Id.* This is also known as the "marked-lane" rule. Defendants suggest that Holloway did not commit a marked-lane violation because he did not merge suddenly from the shoulder and was fully in the right lane at the time of the collision. (*See* Mot. for Summ. J. at 13, ECF No. 25). But as noted previously, the suddenness of Holloway's merge is subject to debate: Holloway recalls switching to the right lane from the shoulder 15 to 20 seconds before the crash, but Yukech and Ullmer both remember a much more abrupt lane change. Additionally, Trooper Nelson, who is presumably well-versed in the state traffic laws as a member of the highway patrol, considered Holloway's maneuver to be a marked lane violation. (Nelson Dep. 47:19–20, ECF No. 29-1). The fact that Defendants' expert, Hicks, concludes that Holloway was fully in the right lane at the time of the crash is not dispositive; after all, it is possible for a driver to complete her merge successfully and still have committed an unsafe maneuver if, for example, the merge was only completed without incident because the driver behind her took abrupt evasive action, such as braking suddenly or swerving away. As previously noted, there exists a genuine dispute as to whether Holloway merged suddenly into the right lane of the highway in front of Yukech. *See supra* Part III.A. The existence of such a dispute precludes this Court from concluding, as a matter of law, that Holloway did not commit a marked-lane violation.

---

[12] Defendants do not address the allegations that Holloway violated Ohio Rev. Code § 4511.22(A), as that allegation was added to the Amended Complaint after Defendants filed their motion for summary judgment. Defendants also do not address the question of whether Holloway was negligent pursuant to the common law.

Second, the right-of-way statute, Ohio Rev. Code § 4511.44, mandates that drivers "yield the right of way to all traffic approaching on the roadway" when entering or crossing the roadway. *Id.* A driver forfeits her right-of-way, however, if she is proceeding unlawfully, *Morris v. Blumgren*, 187 N.E. 2, 4 (Ohio 1933); *Beers v. Wills*, 179 N.E.2d 57, 59 (Ohio 1962), in which case failing to yield the right-of-way to the driver does not constitute a violation of the right-of-way statute. *City of Upper Arlington v. Conley*, 2006-Ohio-6648, ¶ 14, 2006 WL 3703443, at *3 (Ohio Ct. App. Dec. 14, 2006) (citing *State v. Young*, 552 N.E.2d 226, 227 (Ohio Ct. App. 1988)). A driver exceeding the speed limit is considered to be operating her vehicle "unlawfully." *See id.* (citing *Ohio Cas. Ins. Co. v. Gudger*, 456 N.E.2d 547, 550 (Ohio Ct. App. 1982)). In this case, there is unrefuted evidence that Yukech was driving faster than the posted speed limit on the morning in question; the pre-crash data recorded by the Malibu shows that the car was traveling at over 80 mph, substantially above the posted speed limit of 70 mph. Additionally, multiple witnesses recall Yukech speeding in the 80 mph range.[13] Yukech disputes the precise speed at which she was driving, but any speed in the 81–86 mph range is beyond the posted speed limit and is therefore unlawful. (*See* Pl.'s Resp. at 11, ECF No. 34).

It is true that, even where a defendant cannot be held negligent *per se* for failing to yield because the plaintiff driver forfeited her right-of-way, the defendant "may [still] be negligent if his or her determination to proceed onto the highway was not reasonably based upon his or her calculation of the location and speed of the approaching automobile." *Gudger*, 456 N.E.2d at 550. After all, there are two separate duties to yield conferred on drivers: a statutory duty, pursuant to

---

[13] There is a genuine dispute about whether Yukech was also driving unlawfully by virtue of texting while driving, as there is conflicting testimony on that issue. The Court sets the issue aside because the speeding is sufficient to conclude that Yukech was operating her car unlawfully.

17

Ohio Rev. Code § 4511.44, and a common law duty, rooted in the duty to exercise ordinary care. *See Gudger*, 456 N.E.2d at 550; *see also Hubner v. Sigall*, 546 N.E.2d 1337, 1340 (Ohio Ct. App. 1988) (noting the common law duties of motorists (citing *Morris*, 187 N.E. at 2)). This distinction appears to be at the heart of Yukech's argument that *Conley* and *Gudger* are not applicable to this case. Yukech emphasizes that *Gudger* acknowledges that a defendant who is not negligent *per se* for violating Ohio Rev. Code § 4511.44 may still be negligent under the common law. (*See* Pl.'s Resp. at 18, ECF No. 34). But this has no bearing on the basis of Defendants' motion. As far as this Court can tell, Defendants' narrow argument is only that Holloway did not violate Ohio Rev. Code § 4511.44 because Yukech was speeding and therefore forfeited her right-of-way. (*See* Mot. for Summ. J. at 12 – 13, ECF No. 25). Defendants do not argue that Yukech's speeding forfeited any and all negligence claims against Holloway. (*Id.*).

Because Yukech was driving over the speed limit, she forfeited her right-of-way and Holloway cannot be deemed negligent *per se* for failing to yield the right-of-way. Accordingly, the Court concludes that, as a matter of law, Holloway did not violate the right-of-way requirement in Ohio Rev. Code § 4511.44; the Court, however, is unable to conclude that Holloway did not commit a marked lane violation pursuant to Ohio Rev. Code § 4511.33(A)(1). Finally, the Court does not address whether Holloway was negligent under the common law or under Ohio Rev. Code § 4511.22(A), as these issues were not fully briefed by the parties.

### C. Whether Yukech's Actions were a Superseding Cause

Finally, Defendants suggest that, even if Holloway were negligent,[14] Yukech's own negligence — as purportedly established by her violation of the ACDA statute — was the

---

[14] Defendants note briefly that violations of Ohio Rev. Code § 4511.33(A) or § 4511.44 do not constitute negligence *per se*. (Mot. for Summ. J. at 14, ECF No. 25 (citing *Gudger*, 456 N.E.2d at 550; *Howard v. Beilfuss*, No. 80AP-321, 1981 WL 3065, at *1 (Ohio Ct. App. Mar. 12, 1981))). That is mistaken. First, *Gudger* discussed

18

superseding cause of the accident and, therefore, Holloway should not be held liable. A superseding cause is an independent event that breaks the chain of causation between a defendant's prior negligent act and the eventual injury. *See Berdyck v. Shinde*, 613 N.E.2d 1014, 1024–25 (Ohio 1993) (internal citations omitted). By comparison, an intervening cause does not break the causal chain, and thus does not render the defendant immune to liability for her negligent action. *Id.* at 1024. This Court and Ohio state courts have previously considered an ACDA violation to be a superseding cause that breaks the chain of causation between a plaintiff's injury and a defendant's negligent driving. *See Kinzer v. Serv. Trucking, Inc.*, No. 2:17-cv-00675, 2020 WL 815665, at *4 (S.D. Ohio Feb. 19, 2020) (quoting *Mitchell v. Kuchar*, 2005-Ohio-3717, 2005 WL 1707000, at *1 (Ohio Ct. App. July 21, 2005)); *Sabbaghzadeh v. Shelvey*, No. 90CA007244, 2000 WL 763322, at *6 (Ohio Ct. App. June 14, 2000). But, as this Court has concluded that there is a genuine dispute as to whether Yukech committed an ACDA violation, there must also be a genuine dispute as to whether there is a break in the causal chain that absolves Holloway of liability for his alleged negligence. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on Yukech's negligence claim against Holloway.

### D.     Remaining Claims

As noted previously, Defendants do not provide any independent arguments about Yukech's claims against California Transport. Instead, Defendants notes that the vicarious

---

negligence *per se* in the context of cases in which a plaintiff driver has forfeited her right-of-way by proceeding unlawfully; as such, there is no negligence *per se* because the defendant driver has not violated her statutory duty to yield. Second, *Howard* notes that the defendant in that case was "not negligent *per se* in leaving her lane of traffic *under the circumstances*" because she had "attempted to remain in her lane 'as nearly as practicable,' but was moved from her lane by an errant force over which she had no control." *Howard*, 1981 WL 3065, at *1 (emphasis added). In short, neither case stands for the proposition that a violation of the traffic statutes is not negligence *per se*. Moreover, this does not appear to be the basis for Defendants' motion: the third prong of their argument posits that Yukech was at fault, even if Holloway was negligent. (*See* Mot. for Summ. J. at 14–16, ECF No. 25).

liability and negligent hiring, training, and retention claims are derivative of the primary negligence claim against Holloway, and therefore request summary judgment on the claims against California Transport as derivative of their summary judgment request on the primary claim against Holloway. (*See* Mot. for Summ. J. at 17, ECF No. 25). As the Court finds that summary judgment is not warranted as to the primary negligence claim, the Court also **DENIES** Defendants' request for summary judgment on the remaining claims.

## IV.   CONCLUSION

For the reasons stated more fully above, this Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 25).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  March 6, 2023**